THE ERIE RAILWAY COMPANY ADS. THE UNION LOCOMO-
TIVE AND EXPRESS COMPANY.

Where a contract is for the doing of two or more things, which are
entirely distinct, and one of them is prohibited by law and the others
are legal, such illegality of the one stipulation cannot be set up as a
bar to an action for a breach of one of the valid stipulations.

This suit was in case on promises.  The articles of agree-
ment on which the action was founded was between the Erie
Railway Company, of the first part, and Kasson & Company
and their assigns, of the second part.

The following are the articles :

#### SCHEDULE.

This agreement, made this 18th day of May, 1869, between
the Erie Railway Company, a body corporate of the State of
New York, and recognized by the laws of the State of New
Jersey and the State of Pennsylvania, party of the first part,
and Kasson & Company and their assigns, of New York city,
party of the second part—

WITNESSETH : Whereas, the party of the second part own
and are desirous, on their account, to construct certain cars of
an unusual size and of great strength, weight, and capacity,
whereon locomotive engines and tenders can be conveyed over
the railway of the party of the first part, in the States of New
Jersey, New York, and Pennsylvania; and whereas, such
cars, with the locomotive engines thereon, when drawn over
the railway of the party of the first part, will subject the
same to greater wear and strain than that produced by the
ordinary cars constructed and used on said railway for the
transportation of freight and passengers—

Now, therefore, in consideration of the premises, and the
sum of $1, paid by the party of the second part to the party
of the first part, it is agreed between them as follows :

 *First*. That the party of the second part will provide cars

and trucks sufficient in size, strength, and weight, and capacity, whereon to carry all locomotive engines and tenders over the road of the party of the first part, and place the said cars and trucks on the road of the party of the first part.

*Second.* Such trucks and cars, and the locomotive engines and tenders thereon, shall be hauled and moved by motive power, to be supplied by the party of the first part, at such times and in such manner as not to interfere with the traffic and business of the party of the first part on their said road, and to such points on the said road as shall be required by the party of the second part.

*Third.* The party of the second part shall not only furnish such trucks and cars, but shall also be at the expense of loading and unloading the same, and shall furnish the necessary hands and means for guarding, managing, and taking charge of all such cars and trucks, and the locomotive engines and tenders to be conveyed thereon, and only the motive power, with the engineer, fireman, and ordinary attendants of freight trains, shall be furnished and supplied by the party of the first part.

*Fourth.* In consideration of the risk and danger incident to the transportation of trucks and cars of unusual size and weight, with the locomotive engines to be carried and conveyed thereon, the party of the second part do agree with the party of the first part, not to hold the party of the first part liable as common carriers, under the laws of the land as relating to common carriers, for any injury that may arise to said trucks and cars, or to the locomotive engines thereon to be transported, arising from any defect or want of capacity in said cars and trucks, or from any neglect or want of care on the part of the party of the second part, or their employees or servants.

*Fifth.* For the motive power to be supplied by the party of the first part, and for the unusual wear and strain of their railway, the party of the second part shall pay, as compensation, not less than thirty-five cents per mile for each locomotive engine and tender, nor more than seventy cents per

mile for each locomtive engine and tender, or such higher rates of compensation as shall be mutually agreed upon ; but it is agreed that the party of the first part shall have a minimum rate for any short distance of not less than $25.

*Sixth.* The party of the second part shall take and receive all locomotive engines and tenders to be transported on trucks and cars over said railways, and shall receive all freights and compensations for such transportation, and the party of the second part can agree for such rates of compensation, for such transportation of locomotive engines and tenders on such cars and trucks, as they may be able to make with the person or persons, party or parties, with whom they may be able to contract, as aforesaid.

*Seventh.* In consideration of the large expense incurred and to be incurred by the said party of the second part under this contract, it is agreed by the Erie Railway Company, that the cars of the said party of the second part shall be the only cars employed in the conveying of locomotive engines and tenders as aforesaid ; and it is agreed further, that the party of the first part shall have the right to load the returning cars or trucks, which would otherwise be returned empty, with such freight as they may deem proper, without payment to the party of the second part for use of said returning cars, provided said cars are not damaged or unnecessarily held or detained by such loads ; and provided also, that such freights shall not consist of locomotive engines and tenders.

*Eighth.* This contract to be and continue in force for five years.

  (Signed)  Erie Railway Company,

        JAY GOULD, *President.*

(Signed) KASSON & Co.

[Five cent stamp, canceled, on original.]

For value received, we hereby sell, assign, transfer, and set over the within contract, made the 18th day of May, 1869, between the Erie Railway Company and ourselves, to the Union Locomotive and Express Company, a body corporate

of the State of New Jersey, they agreeing to keep and perform all the stipulations and agreements on the part of Kasson & Company in said contract.

New York, June 12th, 1869.

KASSON & Co.

The plaintiffs, in their declaration, after setting forth in substance the said agreement and assignment, aver that, relying upon the good faith of the defendants, and that they would, in all things, comply with their agreement, they expended large sums of money, viz., $100,000, in the purchase of cars, trucks and other materials, for transporting said locomotives and tenders, and in the employment of laborers and servants to carry out and perform the said agreement. And they further aver, that if defendants had performed the agreement on their part, and had allowed or permitted the plaintiffs to perform the agreement on their part, they, the plaintiffs, would have made, during the time of said contract, a large amount of money, to wit, $100,000, and that the contract was worth to them, at the time of the agreement, that amount. Yet the said defendants, well knowing the same, afterwards, to wit, &c., refused to permit, and would not permit or allow the said plaintiffs to transport locomotives on the railway of said defendants, according to said contract, and would not permit or allow said plaintiffs to transport locomotives and tenders upon the said defendants' railway, as was provided for by said contract or agreement, whereby all the said cars, trucks and other materials purchased as aforesaid by plaintiffs became worthless, and whereby, also, said plaintiffs were obliged to and did pay out a large amount of money, to wit, $10,000, to laborers whom they had employed, to enable them to perform the transportation of such locomotives and tenders (of which there was a large number at the time of the assignment aforesaid, and hitherto has been, to transport upon the railway of the defendants,) and a large sum, to wit, $5000, for rent of offices for carrying on their business, and were put to divers other losses and inconveniences, to wit, at Paterson

aforesaid. There was a second count to the declaration, which need not now be referred to.

The defendants demurred generally to the whole declaration, and there was a joinder.

The case was argued at June Term, 1871, before BEASLEY, CHIEF JUSTICE, and Justices DALRIMPLE, DEPUE and VAN SYCKEL.

For demurrer, *I. W. Scudder.*

Contra, *A. B. Woodruff.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. Upon the argument before this court, the counsel for the defendants relied chiefly, in support of the demurrer, upon the proposition that the stipulation contained in the article of agreement, which gave to the plaintiffs the exclusive right to carry locomotives and tenders on trucks over the Erie road was illegal. The principle that, as common carriers, the defendants were bound to exercise their office with perfect impartiality, in behalf of all persons who apply to them, and that practicing this public employment, they cannot discharge themselves, by contract, from the obligation, was appealed to in support of this position.

The agreement between these parties was, in short, this: The firm of Kasson & Company, who were the assignors of the plaintiffs, the Union Locomotive and Express Company, agreed to provide "cars and trucks sufficient in size, strength, weight and capacity whereon to carry all locomotive engines and tenders," and that they would be at the expense of loading and unloading the same; and for the motive power, which was to be supplied by the Erie Railway Company, the defendants, and for the unusual wear and strain of their railway, a certain compensation, which was stated in said articles of agreement, was promised to be paid. On their side, the Erie Railway Company agreed, in addition to the stipulations

for providing motive power and giving the use of the road, that the cars of the assignors of plaintiffs should be the only cars employed in the transportation of locomotive engines and tenders. It is this last provision which gives rise to the objection already stated. It is insisted this stipulation gives the plaintiffs the exclusive control, on their own terms, of this branch of business; that it precludes all competition, and being the grant of a monopoly, is inconsistent with the purpose and objects of the charter of the defendants, and with their character as common carriers. The question thus presented is one of much importance, and it should not, consequently, be decided except when it shall be an element essential to the judgment of the court in the particular case. That it is not such an element, on the present occasion, is obvious, for, let it be granted that the provision in question is illegal, and therefore void, still such concession cannot, in the least degree, impair the plaintiffs' right of action. The suit is not for a breach of this promise of the defendants, that no other cars but those of the plaintiffs shall be employed in this branch of the carrying business, but it is for the refusal of the defendants to permit the plaintiffs to transport locomotives and tenders, according to their contract, over the railway of the Erie company. This latter stipulation, the violation of which forms the ground of action, is distinct and entirely separable from the former one, in which it is alleged the illegality before mentioned exists. Admitting, then, for the purpose of the argument, the illegality insisted on, the legal problem plainly is this: whether, when a defendant has agreed to do two things, which are entirely distinct, and one of them is prohibited by law, and the other is legal and unobjectionable, such illegality of the one stipulation can be set up as a bar to a suit for a breach of the latter and valid one. This point was but slightly noticed on the argument; nevertheless, an examination of the authorities will show that the rule of law upon the subject has, from the earliest times, been at rest. It was unanimously agreed, in a case reported in the Year Books, 14 *Henry VIII.* 25, 26, that if some of

the covenants of an indenture, or of the conditions endorsed upon a bond, are against law, and some good and lawful, that in such case, the covenants or conditions which are against law are void *ab initio*, and the others stand good. And from that day to this, I do not know that this doctrine, to the extent of its applicability to this case, has anywhere been disallowed. It was the ground of the judgment in *Chesman* v. *Nainby*, 2 *Lord Raymond* 1456, that being a suit on an apprentice's bond. The stipulation alleged to have been broken was, that the apprentice would not carry on the business in which she was to be instructed, within " the space of half a mile " of the then dwelling-house of the plaintiff. There was also a further stipulation that she should not carry on this business within half a mile of any house into which the plaintiff might remove. The suit was for a breach of the former stipulation, and it was admitted that the latter one was void, as imposing an unreasonable restraint on trade, and it was urged that, by force of this illegal feature, the whole contract was void. But the court were unanimously of opinion that as the breach was assigned upon that part of the condition which was good in law, therefore if the other part, to which exception was taken, was against law, yet that would not hinder the recovery upon part of the condition which was legal. This judgment was afterwards affirmed by the twelve judges, on an appeal to parliament, 3 *Bro. Parl. C.* 349.

This rule of law was treated as settled, and was similarly applied in the modern cases of *Mallan* v. *May*, 11 *M. & W.* 653, and *Price* v. *Green*, 16 *M. & W.* 346. This same legal principle will be found to be discussed and illustrated by different applications in the following decisions: *Gaskill* v. *King*, 11 *East* 165 ; 15 *Ib.* 440 ; *Nichols* v. *Stretton*, 10 *Adol. & El.*, *N. S.* 346 ; *Chester* v. *Freeland*, *Ley R.* 79 ; *Sheerman* v. *Thompson*, 14 *Adol. & El.* 1027.

These and other authorities which might be referred to, settle the rule, that the fact that one promise is illegal will not render another disconnected promise void. The doctrine will not embrace cases where the objectionable stipulation is

for the performance of an immoral or criminal act, for such an ingredient will taint the entire contract, and render it unenforcible in all its parts, by reason of the maxim *ex turpi causa non oritur actio.* Nor will it, in general, apply where any part of the consideration is illegal, so that in the present case, if, upon the trial, it should appear that the plaintiffs have agreed to pay to the defendants more than the charter of the latter allows, it may become a question whether this suit will lie. There are many decisions to the effect that where there are a number of considerations, and any one of them is illegal, the whole agreement is avoided, this doctrine being put upon the ground of the impossibility of saying how much or how little weight the void portion may have had as an inducement to the contract. But, at the present stage of the cause, the entire consideration of the promise sued on must be regarded by the court as unobjectionable, as there is nothing on the record to show any overcharge.

On the ground, then, that both the consideration and the promise, which is the foundation of the action, appear to be valid, the plaintiffs must have judgment on this demurrer.

It is proper to remark that as the demurrer is a general one to the whole declaration, I have considered only the cause of action set out in the first count.

Judgment for plaintiffs.

CITED *in Union Locomotive and Express Co.,* v. *Erie Railway Co.,* 8 *Vr.* 26; *Stewart* v. *Lehigh Valley R. R. Co.,* 9 *Vr.* 521; *Frank* v. *Freeholders of Hudson,* 10 *Vr.* 352; *Siedler* v. *Freeholders of Hudson,* 10 *Vr.* 637.